## Commonwealth v. Maust, Appellant.

282

Argued March 8, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Leland W. Walker,* with him *Walker and Kimmel,* for appellant.

*Alexander Ogle,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, P. J., April 15, 1965:

Defendant, a justice of the peace, was found guilty before a judge and jury on two indictments charging fraudulent conversion. His motions for directed verdict and in arrest of judgment were overruled and sentences imposed.

On appeal defendant does not ask for a new trial but contends only that the motion in arrest of judgment should have been granted since the evidence does not support the verdicts of the jury.

Viewed in a light most favorable to the Commonwealth (*Com. v. Mitchell,* 181 Pa. Superior Ct. 225, 227, 124 A. 2d 407), the evidence at trial shows the following. Defendant was and for many years had been a justice of the peace in the Borough of Salisbury, Somerset County, Pennsylvania. The prosecutions grew out of defendant's failure to turn over moneys collected by him on behalf of two persons, Walter Weaver and Mrs. Compton.

Walter Weaver filed suit before defendant to recover $42.55 for labor at the Compton Brick Works. Eva Compton made payment of the Weaver claim to defendant on April 16, 1962 and defendant held this fund over thirteen months. Defendant made no effort to notify Weaver of the receipt of the money during this period. The prosecution for fraudulent conversion was filed May 31, 1963 and not until five days later, on June 4, 1963, did Weaver receive his money. Weaver made several unsuccessful attempts to see defendant. The district attorney's office demanded payment of both the Weaver and Compton claims, beginning November 17, 1962.

Eva Compton, an officer of Compton Brick Works, a family corporation, filed the other prosecution

against defendant. In March or February of 1962 Mrs. Compton turned over to Squire Maust a claim which she had against W. H. Fratz Co., of Accident, Maryland, for tile sold, totaling $289.60. On August 25, 1962 defendant visited Fratz Co. in Maryland and received a check for $239.60, together with a receipted bill for a lawn mower at $50.00 for defendant's personal use. Defendant held the balance of this money, $239.60, for more than nine months; the prosecution was filed May 31, 1963. Later, on July 23, 1963, the Somerset Trust Co. issued an attachment execution against Compton Brick Works, naming Maust as garnishee, and subsequently Maust paid the Compton money into the Court of Common Pleas to await distribution.

Mrs. Compton tried several times to contact the defendant upon learning that he had received the money. On September 25, 1962 Mrs. Compton made demand on defendant for payment of the $289.60, by certified mail, special delivery, which was returned to her by the postman unopened. Defendant admitted a properly addressed letter would be expected to reach him in this community. Prior to prosecution the district attorney also made several demands for payment of the Compton funds. In response the defendant visited the district attorney November 24, 1962 and stated that he would pay the two claims later, after the first of the year, but could not do so then.

Defendant took the stand and testified in his own behalf. He admitted receipt of the $42.55 owed Weaver by Compton, on April 16, 1962, but stated he received no demand for payment from Weaver until the letter from the district attorney. Defendant also admitted receipt of the money from Fratz for Compton but claimed the deduction for the lawn mower of $50.00 covered his fees. As to the remainder of the Compton claim, defendant said no demand was ever made upon

him by the Comptons. Defendant also claimed he was authorized to apply these funds to debts owed by the Comptons to creditors of Compton Brick Works. Maust also showed that subsequent to the prosecutions, the balance of the Compton funds, $239.60, was turned over to the Common Pleas Court on an attachment execution by Somerset Trust Co. against the Compton Brick Works.

Upon a review of the entire record we think there was sufficient evidence to sustain the verdicts in these cases. From the evidence the jury could find a willful misapplication and conversion of the two funds in question.

Appellant contends there was no conversion because no demand was made upon him for payment of these funds by claimants. This contention is answered in *Com. v. Stone,* 187 Pa. Superior Ct. 225, 228, 144 A. 2d 614, affirmed 395 Pa. 584, 150 A. 2d 871, as follows: "A demand and refusal is but one means of showing that there has been a conversion. Ordinarily, where defendant has come into possession of property lawfully, evidence of a demand and a refusal to redeliver is essential to complete the proof of a conversion: Com. v. Winegrad, 119 Pa. Superior Ct. 78, 180 A. 160; but the absence of a demand is not controlling where the element of actual misapplication is made out by other evidence: Com. v. Schuster, 158 Pa. Superior Ct. 164, 167, 44 A. 2d 303." The gist of the offense of fraudulent conversion is the withholding of another's property with the intent to defraud or deprive the other person of the use and benefit of his property and to convert or apply the same to defendant's own use or benefit as against the owners: *Com. v. Doria,* 193 Pa. Superior Ct. 206, 211, 163 A. 2d 918.

The jury could find that defendant was not authorized to retain the money collected from Fratz, or to apply it to other claims, but owed the same to Mrs.

Compton and retained and converted it to his own use. Further, the defense that defendant made payment of the Compton claim under an attachment execution, would be invalid, under evidence in the case showing that the attachment was made subsequent to the time during which defendant unlawfully retained and converted the money to his own use.

Under the evidence produced at trial, the jury could find defendant guilty of fraudulent and willful conversion on both indictments. As stated in *Com. v. Spiegel,* 169 Pa. Superior Ct. 252, 255, 82 A. 2d 692: "The fact that defendant was given possession for an express purpose and knew the money was due immediately yet retained possession of the greater part of it for several months is ample evidence of his intention to apply it to his own use to the detriment of the owner. Com. v. Ryder, 80 Pa. Superior Ct. 452." The defenses put forth by defendant presented factual matters for determination by the jury, and the jury found against defendant.

Judgments of sentence are affirmed in each case and it is ordered that appellant appear in the court below at such time as he may there be called and that he be directed to comply with the sentences imposed by that court.

WRIGHT and WATKINS, JJ., would arrest the judgments.